# IN THE WESTERN DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| MICHAEL W. HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08-0362-CV-W-FJG |
| | ) | |
| ASSISTANT ATTORNEY GENERAL OF | ) | |
| THE STATE OF COLORADO, | ) | |
| PAUL CHESSIN, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 126). Defendant seeks summary judgment on the issues of lack of personal jurisdiction and prosecutorial immunity. The Court finds the first issue to be dispositive, and considers only it below.

**I.    Facts**

This case arises from plaintiff's April 15, 2008, arrest by Clay County Sheriff's Department officers. Defendant Paul Chessin is an assistant attorney general for the State of Colorado. Plaintiff alleges that defendant Chessin was investigating a company known as "Cash Advance," and that various subpoenas were issued to Cash Advance. When Cash Advance did not comply with the subpoenas, defendant Chessin allegedly filed an ex parte application in a Colorado trial court for an order directing Cash Advance and its officers to comply with the subpoena, and the trial court entered such an order. Defendant Chessin identified plaintiff as an officer of Cash Advance, but plaintiff alleges that copies

of the Colorado motions and orders were not served on plaintiff.

After plaintiff did not appear at a March 30, 2007 contempt advisement hearing, the Colorado Court issued a bench warrant for plaintiff. However, before the judge could release the warrant for execution, he required the Attorney General to provide a physical description of Hicks and any additional identifying information it could obtain. On March 25, 2008, after receiving the identifying information about Michael Hicks, the Colorado court released the warrant for the arrest of plaintiff with a physical description and an address listed as 8004 Wenonga Road, Leawood, Kansas 66206. The warrant was issued to "Any person authorized by law to execute warrants within the State of Colorado." Amended Complaint, Doc. No. 68, ¶ 28. The warrant was placed on the NCIC or "national wire," making the warrant effective nationwide.

Plaintiff was arrested on April 15, 2008, pursuant to the Colorado warrant, by Missouri law enforcement officials at his residence in Kearney, Missouri in Clay County. As discussed in this Court's previous Order denying defendant's motion to dismiss for lack of personal jurisdiction (Doc. No. 35), in plaintiff's Amended Complaint, he alleges that, upon information and belief, defendant Chessin placed several telephone calls to the Clay County, Missouri Sheriff's Department regarding the arrest warrant, allegedly instructing and demanding the officers to pick up plaintiff no matter what. Amended Complaint, Doc. No. 68, ¶¶ 38, 39. Plaintiff alleges that defendant Chessin did this, knowing that he had no legal authority to act outside the State of Colorado. Amended Complaint, Doc. No. 68, ¶¶ 37, 40. The Court previously found that the allegations that defendant placed telephone calls to Missouri law enforcement officials demanding the arrest of plaintiff were sufficient to support personal jurisdiction at that stage of the litigation. See Doc. No. 35, pp. 8-9.

2

The record has subsequently been developed by the parties, and paints a different picture as to defendant Chessin's contacts with Missouri. Following the Court's denial of Defendant Chessin's Motion to Dismiss, Defendant Chessin served Interrogatories upon Plaintiff requesting all facts supporting the contention that "Defendant Chessin placed phone calls to the Clay County Sheriff's Department regarding Plaintiff" and to identify "all persons known to you who claim that Defendant Chessin placed phone calls to the Clay County Sheriff's Department regarding Plaintiff." At that time, in 2009, plaintiff's response was that Cathy Compton, Administrative Captain with the Clay County Sheriff's Office, is the only person in Missouri he claims was called by Defendant Chessin.

Defendant Chessin had no communication of any kind, whether written, verbal, telephonic, electronic or in any other manner, with any person or entity in Missouri, particularly anyone in the Clay County Sheriff's Department, prior to the arrest of Plaintiff Hicks. See Affdavit of Defendant Chessin, Doc. No. 127, Ex. Q. In addition, Administrative Captain Cathy Compton testified 1) she has never heard of nor talked to Defendant Chessin; 2) never received a phone call from Defendant Chessin; 3) does not recall receiving any phone call from the Colorado Attorney General's office; and 4) does not recall talking to any investigator about either Michael Hicks or the Clay County Sheriff's Department. Major David Rogers of the Clay County Sheriff's Department testified he never talked to anyone about or ever even heard of Michael Hicks prior to his arrest and had no information about anyone calling the Sheriff's office about Mr. Hicks preceding his arrest. Captain Shauna Craven of the Clay County Sheriff's Department testified she had never heard of Michael Hicks and was not aware of any phone calls to the Clay County Sheriff's Office preceding Hick's arrest. Lieutenant Steven Wright of the Clay County

3

Sheriff's Department testified he had never heard of Michael Hicks prior to his deposition and had never heard of Defendant Chessin.

Plaintiff also has referred to phone calls between defendant Chessin and Daren Fox, of the Kansas Attorney General's Office, which occurred on April 1, 2008, April 3, 2008, April 9, 2008, and on April 17, 2008 (following the arrest of plaintiff). On or around April 15, 2008, Mr. Fox emailed Sgt. O'Leary in Kearney, Missouri. The email included Mr. Hicks' home address in Missouri and indicated that Mr. Chessin "doesn't need to talk to [Mr. Hicks], just wanted him arrested." Plaintiff has argued that Mr. Fox contacted Clay County officials at the request of Defendant Chessin, but has provided no evidentiary support for this statement. Mr. Fox, however, has provided an affidavit indicating that defendant Chessin did not request or instruct him to contact any law enforcement agency in Missouri. Instead, Mr. Fox indicates that Defendant Chessin requested Mr. Fox's assistance in locating plaintiff at his last known address in Leawood, Kansas. Mr. Fox found an address for plaintiff in Missouri and called the Kearney Police on his own. See Affidavit of Daren Fox, attached to Doc. No. 134 as Exhibit A, at ¶¶ 3-8.

Mr. Hicks was arrested at his home in Missouri on the night of April 15, 2008, and spent 23 hours in jail. Following plaintiff's arrest, on April 16, 2008, defendant exchanged five telephone calls with Sabrina Jack of the Clay County, Missouri Prosecuting Attorney's office: at 9:15 a.m., 10:12 a.m., 1:52 p.m., 2:13 p.m., and 4:14 p.m.[1] An unsigned memo

---

[1] Plaintiff attempts to create questions of material fact by listing the numerous telephone calls defendant Chessin made to Kansas officials. However, telephone calls made to Kansas officials have no bearing whatsoever as to whether there is personal jurisdiction over defendant Chessin in Missouri. Further, as noted by defendant in his reply, there is absolutely no evidence that defendant Chessin placed any telephone calls to anyone in the Clay County Sheriff's office.

dated April 16, 2008 from the Clay County Prosecuting Attorney's Office indicates that Mr. Chessin "called," after a call had been made from Clay County to the Denver County Fugitive Division. The memo further states: "Mr. Chessin will fax me the affidavit he filed with the court, requesting a contempt warrant." See Doc. No. 130, Ex. E. That same day, Mr. Chessin faxed 14 pages of documents to Sabrina Jack in Clay County, Missouri, and stated on the cover page that he was enclosing the affidavit of contempt he had submitted to the Colorado trial court to obtain the contempt citation and arrest warrant:

> Ms. Jack,
>
> As you requested, following are the contempt papers upon which was issued the bench warrant for Michael Hicks. These papers consist of (1) the verified application for issuance of a contempt citation (i.e., the affidavit of contempt), (2) the court's order granting the application and ordering the issuance of the contempt citation, and (3) the contempt citation itself. Mr. Hicks was the president of the company named in the contempt citation.

Doc. No. 130, Ex. B.

By the evening of April 16, Clay County officials released Mr. Hicks from custody, and the next day, Ms. Jack faxed Mr. Chessin a letter explaining the prosecutor's office's belief that Mr. Hicks could not be extradited based on the applicable statutes.

Plaintiff brings causes of action for (1) deprivation of Constitutional rights, in violation of 42 U.S.C. § 1983; (2) false imprisonment; (3) malicious prosecution; and (4) negligence.

## II. Defendant Chessin's Motion for Summary Judgment due to Lack of Personal Jurisdiction

Defendant Chessin moves for summary judgment due to lack of personal jurisdiction. However, a motion for summary judgment for lack of personal jurisdiction is not theoretically proper. See Steven Baicker-McKee and William Janssen, Federal Civil Rules Handbook at 422 (2010 ed.) See also Pope v. Elabo GmbH, 588 F.Supp.2d 1008,

5

1012 (D. Minn. 2008)(finding that a "motion raising the defense of lack of personal jurisdiction is necessarily a motion to dismiss under Rule 12(b)(2), and not a motion for summary judgment under Rule 56," as "a court that lacks personal or subject-matter jurisdiction does not have power to enter *any* king of judgment–summary or otherwise," and a dismissal under 12(b)(2) is always without prejudice). Therefore, the Court will consider the pending motion a renewed motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

        1.      Standard

The party seeking to invoke the jurisdiction of a federal court bears the burden of establishing that jurisdiction exists. Mountaire Feeds, Inc. v. Agro Impex, S.A., 677 F.2d 651, 653 n. 3 (8th Cir. 1982)(citations omitted). "The allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Cantrell v. Extradition Corp. of Am., 789 F. Supp. 306, 308-09 (W.D. Mo. 1992). "To survive a motion to dismiss for lack of personal jurisdiction, the nonmoving party 'need only make a prima facie showing of jurisdiction.'" Bell Paper Box, Inc. v. U.S. Kids Inc., 22 F.3d 816, 818 (8th Cir. 1994) (quoting Dakota Indus., Inc. v. Dakota Sportwear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)). "[T]here must . . . be some evidence upon which a prima facie showing of jurisdiction may be found to exist, thereby casting the burden on the moving party to demonstrate a lack of personal jurisdiction. Once jurisdiction has been controverted or denied, (the plaintiff has) the burden of proving such facts." Aaron Ferer & Sons Co. v. Diversified Metals Corp., 564 F.2d 1211, 1215 (8th Cir. 1977)

(internal quotation marks omitted).

A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and the Due Process Clause of the Constitution.  Pecoraro v. Sky Ranch For Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003). Because Missouri's long-arm statute has been construed to permit jurisdiction to the fullest extent permitted by the Due Process Clause, see Porter v. Berall, 293 F.3d 1073, 1075 (8th Cir. 2002), the Court will "turn immediately to the question of whether the assertion of personal jurisdiction would violate due process."  Id.

A state may exercise personal jurisdiction over a nonresident defendant consistent with due process when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945)(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).  The defendant's contact with the forum state must be purposeful and such that defendant "should reasonably anticipate being haled into court there."  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  A party may anticipate being haled into court in a particular jurisdiction if it "purposefully directed" its activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).  Furthermore, the contacts with the forum state must be more than random, fortuitous or attenuated.  Id. at 475.  In addition, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."  Id. at 474, citing Hanson v. Denckla, 357 U.S. 235, 253 (1958).

With these principles in mind, the Court looks at five factors: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. Pecoraro, 340 F.3d 562. The first three factors are closely related and are of primary importance, while the last two factors are secondary. Id.

      2.      Analysis

Defendant Chessin notes that the Court found previously (when considering only the allegations in plaintiff's complaint, as no affidavits or other evidence were properly before the Court at that time) that the alleged telephone calls to the state of Missouri were the basis for plaintiff's claims and were the alleged cause of plaintiff's injury, and thus were sufficient to demonstrate personal jurisdiction. Defendant Chessin notes that now, after discovery on this issue, the uncontroverted facts are that defendant Chessin made no phone calls to the Clay County Sheriff's office at all, and made no phone calls to the state of Missouri until after plaintiff's arrest. Thus, defendant indicates that he did nothing that would cause him to reasonably anticipate being haled into court in this jurisdiction. Further, defendant indicates that the unilateral activity of third parties (such as someone from the Kansas attorney general's office contacting Missouri officials, or Missouri officials contacting defendant Chessin after the arrest of plaintiff) cannot create personal jurisdiction over defendant. Additionally, placing a warrant on the NCIC system cannot be considered an act of personal availment. Snyder v. Snyder, 2007 WL 894415, *4 (D. Minn. 2007), aff'd 300 Fed. Appx. 440 (8th Cir. 2008).

Plaintiff counters that specific jurisdiction exists in this matter because (1) defendant

Chessin made multiple telephone calls to officials in Kansas requesting they instruct police officers to arrest plaintiff; and (2) once plaintiff was arrested, defendant "targeted" plaintiff in Clay County with multiple phone calls and a 14-page fax to prolong his detention and confinement.

Plaintiff indicates that defendant's use of agents in Kansas to contact Missouri officials caused targeted harm in Missouri. However, plaintiff's argument that Chessin instructed Daren Fox of the Kansas Attorney General's office to contact Missouri law enforcement personnel is not supported by the evidence in this case, as Mr. Fox has provided an affidavit indicating that he located plaintiff in Missouri and contacted the Kearney police on his own, not at the request of defendant Chessin.

Further, plaintiff's theory that Chessin caused the prolonged detention and incarceration of plaintiff does not support the theory that defendant purposefully directed his activity at Missouri; instead, the facts show that defendant Chessin did not initiate contact with the Clay County Prosecutor's Office. Defendant Chessin undoubtedly would have had similar conversations with whatever jurisdiction arrested plaintiff, whether plaintiff was located in Kansas, Missouri, or any other state. These are exactly the sort of random, attenuated or fortuitous contacts that have been held insufficient to justify exercise of personal jurisdiction. See Porter v. Berall, 293 F.3d 1073, 1076 (8th Cir. 2002); T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc., 749 F.2d 523, 525 (8th Cir. 1984); Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 523 (8th Cir. 1996). The posting of the warrant for plaintiff's arrest on NCIC is unfortunate, but it is not an activity that can support this Court's exercise of jurisdiction over defendant Chessin.

There Court concludes there are insufficient contacts between defendant Chessin

and Missouri to satisfy the due process requirements for personal jurisdiction.

## III. Conclusion

Therefore, for all the foregoing reasons, defendant Chessin's motion to dismiss for lack of personal jurisdiction (Doc. No. 126) will be **GRANTED.**  This case is **DISMISSED WITHOUT PREJUDICE**.  All other pending motions are **DENIED AS MOOT.**

**IT IS SO ORDERED.**

Dated:  12/06/10
Kansas City, Missouri

**/S/FERNANDO J. GAITAN, JR.**
Fernando J. Gaitan, Jr.
Chief United States District Judge